UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEITH SEFCIK,                                )          CASE NO. 1:15CV2688
                                             )
            Petitioner,                      )          JUDGE CHRISTOPHER A. BOYKO
                                             )          Magistrate Judge George J. Limbert
      v.                                     )
                                             )
BRIGHAM SLOAN, Warden,                       )          REPORT AND RECOMMENDATION
                                             )          OF MAGISTRATE JUDGE
                                             )
            Respondent                       )

On December 23, 2015[1], Petitioner, Keith Sefcik ("Petitioner"), *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1  He seeks relief for alleged constitutional violations that occurred during his Cuyahoga County, Ohio Court of Common Pleas convictions for felonious assault, aggravated menacing, and domestic violence. ECF Dkt. #6-1 at 8.  On April 4, 2016, Respondent Brigham Sloan, Warden of the Lake Erie Correctional Institution, in Conneaut, Ohio ("Respondent") filed a return of writ.  ECF Dkt. #6.  On April 26, 2016, Petitioner filed a traverse.  ECF Dkt. #7.

For the following reasons, the undersigned recommends that the Court DISMISS Petitioner's federal habeas corpus petition with prejudice.  ECF Dkt. #1.

## I.    SYNOPSIS OF THE FACTS

The Ohio Eighth District Court of Appeals set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).  As set forth by the Eighth District Court of Appeals, the facts are:

---

[1] The undersigned notes that Petitioner did not sign or date the instant federal habeas corpus petition.  ECF Dkt. #1. Thus, the undersigned uses the date of the filing of the petition rather than the execution date as traditionally used.

On August 20, 2013, Sefcik spent the day golfing with his father at a course about 45 minutes away from Sefcik's house.  On the way to the course, Sefcik's wife Sandra called Sefcik about her lost car keys.  Eventually Sefcik realized he had accidentally grabbed her keys, and Sandra became angry.  After finishing the round of golf around 2:00 in the afternoon, Sefcik and his father enjoyed a beer before driving back to Sefcik's house.  Sefcik was dropped off without incident, but upon entering the house, an argument occurred between Sefcik and Sandra.  Both argued the other was intoxicated.

Sefcik's version of the argument is as follows.  The couple continued arguing about financial issues and Sandra's drinking.  The argument escalated, and Sefcik decided to leave.  Spending nights in a hotel were a regular occurrence because of the couple's tumultuous relationship.  Sefcik attempted to take Sandra's car because it blocked his in the driveway.  Sandra preferred otherwise.  Another disagreement erupted, and Sefcik went to get his car, which would not start.  Sandra called her father to come and help get Sefcik's car started, and the couple went back into the house to wait.  Sefcik made a sandwich and used a sharp kitchen knife in its preparation.

Sandra's father testified that when he arrived, everyone was in the living room when he entered the house.  He attempted small talk, but Sandra asked if he could get to the car and let the couple finish discussing some things.  Sandra's father did not notice any marks on Sandra's face.  Sandra's father got Sefcik's car started, and Sefcik left, driving to a Speedway to get gas around 4:30-5:00 p.m.  Sefcik called his friend during that time, corroborated by his phone records.  Sefcik claims he briefly visited his brother and then checked into a hotel.  A receipt for the hotel stay was introduced at trial.  Sefcik testified that he did not return to his house until the next morning.

Sandra's story is remarkably different.  She claims that when Sefick arrived home, they immediately began to argue because Sefick, not she, was drunk.  Almost immediately, Sefcik punched her with a closed fist so hard as to cause her to stumble backwards and cause a mark beneath her right eye.  It was then that she called her father for help and went outside to wait in the driveway the 15 minutes it took her father to drive to the house.  She claims she met her father in the driveway.  After the car was started and her father and Sefcik left, Sefick returned and forced his way into the kitchen where he grabbed the kitchen knife and held it against her neck.  He then threw her through the screen door and down the concrete stairs from which she received visible cuts and bruising.  Only then did Sefick leave the house for the evening.

Sandra's version of events before the car was started was contradicted by her father's and Sefcik's largely consistent versions.  Additionally, at trial, the prosecutor showed Sandra a picture of her left eye, supposedly depicting the marks caused by Sefick's closed-fisted punch, which was to her right eye.  When confronted in cross-examination with this discrepancy, she admitted there was no mark from the punch, corroborated by her father's testimony that he did not see a scratch near her eye upon first arriving.  She further admitted to not looking to see if the punch even caused a mark.

> The incident in the kitchen is the prototypical he-said/she-said type of
> event.  She claimed he held a knife to her throat and threw her down the
> concrete stairs.  He claimed he was not even there.  A DNA test was
> conducted on the knife, which the state introduced at trial through
> stipulation.  The results confirmed that Sefcik held the knife at some point
> in time, an issue not really in dispute, but that Sandra's DNA was not on the
> knife despite her claims that the knife was held to her neck as Sefcik threw
> her down the stairs.  The State introduced pictures depicting the injuries that
> Sandra suffered from being thrown down the stairs, partially corroborating
> her version of the events in the kitchen.

ECF Dkt. #6-1 at 55-57.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

In its September 2013 term, the Cuyahoga County Grand Jury indicted Petitioner on:  one

count of felonious assault in violation of Ohio Revised Code ("ORC") § 2903.11(A)(2);

aggravated menacing in violation of ORC § 2903.21(A); and two counts of domestic violence in

violation of ORC § 2919.25(A).  ECF Dkt. #6-1 at 3-4.

Petitioner waived his right to a jury trial and on January 31, 2014, the trial court found

him not guilty on one count of domestic violence, but guilty of felonious assault, aggravated

menacing, and the other count of domestic violence.  ECF Dkt. #6-1 at 5-7.

On February 27, 2014, the trial court sentenced Petitioner to 5 years of imprisonment for

the felonious assault conviction and found that the aggravated menacing and domestic violence

convictions were allied offenses to the felonious assault conviction.  ECF Dkt. #6-1 at 8.

Petitioner was also sentenced to five years of post-release control.  *Id.*

### B.    Direct Appeal

On March 24, 2014, Petitioner, through new counsel, filed an appeal of his convictions to

the Eighth District Court of Appeals.  ECF Dkt. #6-1 at 10. In his appellate brief, Petitioner

presented the following assignments of error:

> 1. APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT IS NOT
> SUPPORTED BY SUFFICIENT EVIDENCE WHERE THE STATE FAILED
> TO PRESENT EVIDENCE THAT APPELLANT CAUSED OR ATTEMPTED
> TO CAUSE PHYSICAL HARM.
>
> 2. APPELLANT'S CONVICITON[sic] FOR FELONIOUS ASSAULT IS
> AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. .

ECF Dkt. #6-1 at 13-38.  The State filed an appellate brief as well. *Id*. at 39-52.

On December 31, 2014, the Eighth District Court of Appeals affirmed the trial court's judgment.  ECF Dkt. #6-1 at 53-64.

### C.      Supreme Court of Ohio

On February 13, 2015, Petitioner, through new counsel, filed a notice of appeal in the Ohio Supreme Court.  ECF Dkt. #6-1 at 65-66.  In his memorandum in support of jurisdiction, Petitioner asserted the following sole proposition of law:

> 1.  When the undisputed evidence reveals that the crime for which the defendant was tried did not occur, it violates his constitutional rights to fair trial, to be free from cruel and unusual punishment, and to due process for him to be found guilty and sentenced.

*Id.* at 67-87.  On July 22, 2015, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal.  *Id.* at 89.

## III.      28 U.S.C. § 2254 PETITION

Petitioner pro se filed the instant federal habeas corpus petition on December 23, 2015.  ECF Dkt. #1.  Petitioner presents the following ground for relief:

> GROUND ONE: When the undisputed evidence reveals that the crime for which the defendant was tried did not occur, it violates his constitutional rights to a fair trial, to be free from cruel and unusual punishment, and to Due Process for him to be found guilty and sentenced.

*Id.*  On April 4, 2016, Respondent filed his answer/return of writ.  ECF Dkt. #6.  On April 26, 2016, Petitioner filed a traverse.  ECF Dkt. #7.

## IV.      STANDARD OF REVIEW

The undersigned recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28  U.S.C. § 2254 well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), cert. denied, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus.  The AEDPA provides:

    (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

        (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

        (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001).

    The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.     Decisions of lower federal courts may not be considered.

    B.     Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.     The state court decision may be overturned only if:

        1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.      the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), cert. denied, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), cert. denied, 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), cert. denied, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of

a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court has observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786-787, 178 L.Ed.2d 624 (2011).

## V. <u>LAW AND ANALYSIS</u>

In his sole ground for relief, Petitioner asserts that the evidence was insufficient in order to convict him of felonious assault.  ECF Dkt. #1-1 at 2.  He contends that the insufficient evidence was presented at trial to show that the marks on Sandra's neck were caused by him scraping her neck with the knife, despite her testimony indicating that they were.  *Id*. at 3.  Petitioner asserts that the DNA testing from the knife showed his DNA and the DNA of another unidentified person, but it contained no DNA of Sandra.  *Id.*  Petitioner concludes that if the knife contained none of Sandra's DNA, the offense of felonious assault was not proven because the knife did not come into contact with Sandra's neck and therefore there was no physical harm caused by the knife as felonious assault requires.  *Id.*

An allegation that the verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh'g denied, 444 U.S. 890 (1979), and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell*, 209 F.3d 854, 885

(6th Cir. 2000), quoting *Jackson*, 443 U.S. at 319.  When reviewing the sufficiency of the evidence, a habeas court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for the jury. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).  Moreover, the inquiry is not whether the trier of fact made the correct determination of guilt or innocence, but whether it made a rational decision to acquit or convict. *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins*, 506 U.S. 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

In determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson*. *See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).  If sufficient evidence exists with which to convict, the inquiry ends.  *Id*.  If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*, quoting *Tucker v. Palmer*, 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.  This is the "double layer" of deference due a state court determination about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).   A district court is not permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact.  *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985), and *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983).

The undersigned notes that Respondent did not include the trial transcript in the record. However, in this case, the Ohio appellate decision suffices to address Petitioner's ground for relief.  Here, the Ohio appellate court addressed the merits of Petitioner's sufficiency of the evidence argument in a footnote because the main focus of its decision  concentrated on his manifest weight of the evidence argument.  ECF Dkt. #6-1 at 58, fn. 1.  However, in asserting that the felonious assault conviction was against the manifest weight of the evidence, Petitioner presented the same issue that he presents before this Court in his ground for relief alleging insufficiency of the evidence: Sandra's lack of DNA on the knife was inconsistent with her trial

testimony that he held the knife to her throat and since the knife did not cause physical harm,

insufficient evidence existed in which to convict him of felonious assault.  ECF Dkt. #6-1 at 58-

60.  In its footnote, the Ohio appellate court cited to *State v. Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991) and explained:

> We summarily reject Sefcik's argument that the verdict is against the sufficiency
> of the evidence, which entirely omits any consideration of a witness's credibility.
> *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the
> syllabus.  If Sandra's story is believed, Sefcik pulled a knife and held it against
> her neck during the assault.  Such conduct satisfies the elements of felonious
> assault with a deadly weapon in and of itself.

*Id.* at 58, fn 1.

Section 2903.11(A)(2) of the Ohio Revised Code provides that "[n]o person shall

knowingly...[c]ause or attempt to cause physical harm to another...by means of a deadly weapon

or dangerous ordnance."  ORC § 2903.11(A)(2).  The Ohio appellate court cited to ORC §

2903.11(A)(2) in its decision and noted that Petitioner's main argument focused on Sandra's

credibility when testifying, which the appellate court agreed was contradicted at points by

extrinsic evidence, including the lack of Sandra's DNA on the knife and her father's testimony

that he saw no marks on her face.  ECF Dkt. #6-1 at 59.  The court acknowledged that

contradictions existed between the lack of Sandra's DNA on the knife and her testimony that

Petitioner held the knife to her throat and scratched her with it.  ECF Dkt. #6-1 at 62.  The

court found the lack of Sandra's DNA on the knife problematic, along with the fact that the State

failed to offer evidence explaining this discrepancy.  *Id.*  However, the Ohio appellate court

reasoned that "all that is required to convict Sefcik of felonious assault is that he attempted to

cause harm with a deadly weapon."  *Id.*  The court held that the knife need not have caused

actual injury in order to prove felonious assault, but rather, it sufficed that the knife was merely

used in the attempt to harm Sandra.  *Id*. at 60, citing Ohio cases.  The appellate court held that

sufficient evidence existed in which to find that Petitioner attempted to cause harm by at least

holding the knife to Sandra's throat.  *Id*.  The Ohio appellate court explained that the trial court

heard all of the evidence, including the inconsistencies in Sandra's testimony and the lack of

DNA evidence, and nevertheless found some of Sandra's testimony credible as to the use of the

knife.  *Id*.  The appellate court deferred to the trial court's resolution of the disputed facts and held that

> "[e]ven though the particular physical harm does not come to fruition, evidence demonstrating that the defendant held a knife to a victim's throat is sufficient to conclude that the offender attempted to cause physical harm with a deadly weapon.

*Id.*  The appellate court also found that Sandra's testimony was not completely incredible as some physical evidence presented at trial supported her version of events that she testified happened in the kitchen.  *Id*.

Upon review of the Ohio appellate court's decision, the undersigned recommends that the Ohio appellate court's decision is not contrary to or does not involve an unreasonable application of *Jackson,* and it does not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state courts.  The appellate court cited to *Jenks*, which cited to *Jackson* and the standard of review for a sufficiency of the evidence analysis.   The Ohio appellate court set forth the requirements for a felonious assault conviction under section 2903.11(A)(2) of the Ohio Revised Code, reviewed the record and the trial court's determination, and found that despite the lack of Sandra's DNA on the knife and testimony contradicting Sandra's testimony concerning actual harm caused by the knife, sufficient evidence was presented in order for the trial court to find that Petitioner used the knife to attempt to cause physical harm to Sandra.  The appellate court stressed that the Ohio felonious assault statute did not require that the knife actually cause physical harm to Sandra, and it deferred to the trial court's credibility determination as to the parts of Sandra's testimony stating that Petitioner held the knife to her throat as some physical evidence in the case supported parts of her testimony.  Petitioner in this case has failed to show by clear and convincing evidence that the state court's factual findings were not entitled to presumptive correctness or that they had no

support in the record.

## VI.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the

instant petition in its entirety with prejudice.


DATE:  July 18, 2017                                    _/s/ George J. Limbert_____
                                                        GEORGE J. LIMBERT
                                                        UNITED STATES MAGISTRATE JUDGE



ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of
Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to
file objections within the specified time WAIVES the right to appeal the Magistrate Judge's
recommendation. L.R. 72.3(b).